**SOLID WASTE AGENCY OF NORTHERN COOK COUNTY, Plaintiff,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

No. 94 C 7489.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 5, 1995.

Russell R. Eggert, Julian C. D'Esposito, Jr., Mayer, Brown & Platt, Chicago, IL, George J. Mannina, Jr., Gary C. Adler, David L. Anderson, O'Connor and Hannan, Washington, DC, for plaintiff.

Joseph M. Ferguson, Asst. U.S. Atty., United States Attorney's Office, Chicago, IL, for defendants.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On December 16, 1994, Solid Waste Agency of Northern Cook County ("SW") sued the United States Army Corps of Engineers ("Corps"), and others, alleging that the Corps wrongly denied it a permit under § 404 of the Clean Water Act, 33 U.S.C. § 1344, to deposit waste at a proposed site ("Site"). On January 17, 1995, the Village of Bartlett ("VAB") and the Citizens Against the Balefill ("CAB") moved to intervene as defendants under Fed.R.Civ.P. 24(a)(2) and (b)(2). For the reasons discussed below, we deny VAB's and CAB's ("Applicants'") motion.

### I. Discussion [1]

#### A. Intervention by Right

In *Am. Nat'l Bank & Trust v. City of Chicago,* 865 F.2d 144 (7th Cir.1989), the Seventh Circuit stated that "Rule 24(a)(2) [2] establishes four criteria for intervention as a matter of right: (1) the motion must be timely; (2) the proposed intervenor must claim an interest relating to the property or transaction at issue; (3) the disposition of the action, as a practical matter, may impair or impede the ability to protect that interest; and (4) that interest is not adequately represented by existing parties." *Id.* at 146. "The proposed intervenor has the burden of proving each element, and lack of even one element requires denial of the motion." *Id.*

#### 1. The Second Criterion: Related Interest

█ The Applicants argue that they have sufficient interest to intervene by right. VAB argues that it has sufficient interest because the Site "would violate Bartlett's Comprehensive Plan and would subject Bartlett and its citizens to degraded property values, losses of tax revenues, increased municipal costs for police and other services,

and increased noise, dust, debris, noxious odors, and other harmful effects." Apps.' Mot. at 3. And CAB argues that it has sufficient interest because its "members include landowners adjoining, or in close proximity to, the [Site]; residents, property owners, and taxpayers of Bartlett and numerous other communities ...; and recreational users of the [Site] and the Bluff Spring Fen Nature Preserve." *Id.* at 3–4. Moreover, the Applicants argue that they have "opposed [SW]'s proposed damage to the [Site] for many years" and "have provided expert witnesses, testimony, and legal briefing" to booster their opposition. *Id.* at 4.

SW responds that the Applicants have insufficient interest. First, VAB "neglects to mention that the [Site] is not within Bartlett and, therefore, not subject to the Comprehensive Plan." Pl.'s Br. at 7 n. 10. Second, VAB "overlooks the zoning approval of the Cook County Board of Commissioners which requires [SW] to pay any homeowner within one mile of the [Site] the full amount of any decrease in property value due to operation of the [Site]." *Id.* Third, VAB neglects to mention that "the [Site] is in unincorporated Cook County and police services are provided by the Cook County Sheriff." *Id.* Fourth, CAB overlooks that "[the] entire [Site] is posted with no trespassing signs and recreational use of the site by CAB is illegal." *Id.*

In *Am. Nat'l Bank,* the Seventh Circuit reaffirmed that "the interest necessary to satisfy Rule 24(a)(2) must be 'a direct, significant legally protectable interest.'" *Id.* (quoting *Wade v. Goldschmidt,* 673 F.2d 182, 185 (7th Cir.1982) (restating that the interest must be "in the property or transaction subject to the action"); *see Donaldson v. U.S.,* 400 U.S. 517, 531, 91 S.Ct. 534, 542 (1970). The interest "must be greater than the interest sufficient to satisfy the standing requirement." *U.S. v. 36.96 Acres of Land,* 754 F.2d 855, 859 (7th Cir.1985), *cert. denied,* 476 U.S.

---

1. We proceed, as the parties do, directly to the legal argument. *But see* Apps.' Br. at ¶ 2.

2. In relevant part, the Rule provides: "Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or

transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986). It "must be so direct that the applicant would have 'a right to maintain a claim for the relief sought.'" *Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985) (quoting *Heyman v. Exch. Nat'l Bank of Chicago,* 615 F.2d 1190, 1193 (7th Cir.1980)). "[N]o special broad definition of 'interest' applies to suits involving 'public law' cases." *Id.* at 1269. "[T]he critical concern is not the 'theoretical interests of proposed intervenors ... but whether already initiated litigation should be extended to include additional parties.'" *36.96 Acres,* 754 F.2d at 858 (quoting *Wade,* 673 F.2d at 184).

In this case, what are the Applicants' interests? We narrow them because, in their reply brief, the Applicants do not challenge SW's factual counter-arguments.[3] Therefore, their surviving interests are those of adjacent landowners who demonstrate a longstanding, informed opposition to the Site and who may endure environmental and aesthetic "harmful effects" from it. What is the property that is subject to the action? It is the Site.[4]

We consider whether their interests in the Site are sufficient. First, their adjacent landownership is insufficient. It must be, or else neighbors would have the right to intervene in each other's suits. And if the neighbor can intervene, the neighbor's neighbor can intervene. We stay off this slippery slope. Second, their longstanding opposition to the Site, although relevant, is insufficient. *Keith,* 764 F.2d at 1270. Third, their informed opposition to the Site is insufficient. *Wade,* 673 F.2d at 185. Fourth, their endurance of environmental and aesthetic "harmful effects" from the Site is insufficient. *36.96 Acres,* 754 F.2d at 859. Therefore, we conclude that their interests, individually or collectively, are insufficient.

Next, we consider whether the Applicants' three notable citations to law warrant altering our conclusion. Most notably, they cite

*Sierra Club v. U.S. Envtl. Protection Agency ("EPA"),* 995 F.2d 1478 (9th Cir.1993). There, "[t]he Sierra Club and an individual sued the [EPA] ... under the citizens' suit provision of the [Clean Water Act]." *Id.* at 1480. "The City of Phoenix moved to intervene [as a defendant].... [and] [t]he district court denied [its motion] for lack of a 'protectable interest' under *Portland Audubon Soc'y v. Hodel,* 866 F.2d 302 (9th Cir.), *cert. denied,* 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989)." *Id.* The Ninth Circuit, however, reversed the denial, stating that:

> Unlike the loggers in *Portland Audubon,* the City owns rights protected by law relating to the property which is the subject of the action. The loggers' interest in *Portland Audubon* appears to have been an economic interest based upon a bare expectation, not anything in the nature of real or personal property, contracts or permits. The City of Phoenix, by contrast, owns the wastewater treatment plants and the permits.

*Id.* at 1482. The circuit court explained that, "the lawsuit would affect the use of real property owned by the intervenor by requiring the defendant to change the terms of the permits it issues to the [intervenor], which permits regulate the use of that real property." *Id.* at 1483. The court concluded that "[t]hese interests are squarely in the class of interests traditionally protected by law," so Rule 24(a)(2) intervention is proper. *Id.*

In this case, unlike in *Sierra Club,* the Applicants do not own the proposed Site or the permit that may regulate the use of it. At most, they have an indirect, or collateral, interest, and that is insufficient. *See, e.g., Donaldson,* 400 U.S. at 523, 91 S.Ct. at 538–39 (finding that the indirect, or collateral, interest of the circus worker was insufficient); *see also Southmark Corp. v. Cagan,* 1990 WL 251824, at *4 (N.D.Ill. Dec. 21, 1990), *aff'd,* 950 F.2d 416 (7th Cir.1991). Likely realizing this, the Applicants focus on the *Sierra Club* court's qualifying statement that, "[i]n some contexts, we have deter-

**3.** We discount the Applicants' conclusory statements that they "have concerns much more direct than merely making their views known" and that they have "well-recognized" "interests regarding the [Site]." Apps.' Rep.Br. at 5.

**4.** It is not the § 404 permit. No private party owns the denied permit. In any event, this interpretation most favors the Applicants.

mined that interests less plainly protectable by traditional legal doctrines sufficed for intervention of right." 995 F.2d at 1482. Specifically, they focus on one of those contexts, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir.1983). The impetus behind *Sagebrush*, however, was the potential inadequacy of the defendant's representation. *Id.* at 528. Moreover, at least in early 1980s, the Ninth Circuit's common law on Rule 24(a)(2) was more "liberal" than the Seventh Circuit's. *Id.* at 527; *cf., e.g., 36.96 Acres*, 754 F.2d at 859. The Applicants' reliance on *Sierra Club* is unavailing.

The Applicants cite two other notable cases. One is *Town of Norfolk v. Corps*, 968 F.2d 1438 (1st Cir.1992). There, "the Towns of Walpole and Norfolk challeng[ed] the decision of the [Corps] to issue a permit under [§] 404 of the Clean Water Act to allow the Massachusetts Water Resources Authority to place fill in an artificial wetland located in the Town of Walpole and adjacent to the Town of Norfolk." *Id.* at 1442. That case is inapposite because the parties initiated the action; they did not attempt to intervene. Moreover, it is distinguishable because one of the parties, the Town of Walpole, had a direct property interest in the site. The other case is *Monongahela Power Co. v. Marsh*, 809 F.2d 41 (D.C.Cir.), *cert. denied*, 484 U.S. 816, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987). There, the "Monongahela group" sued the Corps under § 404 for denying it a permit "to discharge fill material into navigable waters in the course of construction of the planned hydroelectric facility." *Id.* at 43. In a footnote, the court stated that "[t]he State of West Virginia and six conservation groups were permitted to intervene." *Id.* at 44 n. 13. That case is inapposite because the intervention was by permission, not right, and, in any event, the intervention was not an issue on appeal.

Considering this Circuit's common law, we conclude that the Applicants' interests are not direct, significant and legally protectable.[5] Moreover, considering the Applicants' citations to other jurisdictions' common law, our conclusion remains unaltered. Therefore, we deny the Applicants' motion to intervene by right.

### 2. The Fourth Criterion: Adequate Representation [6]

■ The Applicants argue that the Corps would not adequately represent them. "[T]here can be no doubt that [they] ... have a great deal of 'knowledge and concern' about the issues at stake." Apps.' Br. at 9. "There can also be no doubt that [they] stand to suffer much more directly than the United States if the [Corps'] rulings are overturned." *Id.* at 9–10. The Applicants "wish to intervene, not because they fear any lack of skill or diligence on the part of the United States, but rather because the United States' interests are of necessity not the same as [theirs]." *Id.* at 10. "The United States is concerned with the public interest overall. [The Applicants] have more particular concerns to protect the [Site]." *Id.* Consequently, they argue that we should grant their motion to intervene.

SW responds that the Corps would adequately represent the Applicants. They "do not deny that they and the government share the same ultimate objectives of upholding the government's jurisdictional determination and the permit denial." Pl.'s Br. at 10. Rather than offer evidence of a conflict, the Applicants "rely on assertions that they have a great deal of knowledge and concern about the issues at stake and that their burden of showing inadequate representation should be minimal." *Id.* at 11. SW's argues that the Applicants' reliance is misplaced and, consequently, we should deny their motion to intervene.

■ The "[a]dequacy [of representation] can be presumed when the party on whose

5. *The Third Criterion: Impaired Interest:* "Because the [Applicants] ha[ve] failed to assert a direct, legally protectable interest, it follows that [they] ha[ve] failed to assert an interest that could be impaired or impeded by the district court proceedings." *Am. Nat'l Bank*, 865 F.2d at 147; *see Wade*, 673 F.2d at 186.

6. We could have most easily resolved the Applicants' motion under this fourth criterion, but, out of respect for the parties, we resolved of it under the second one, which addresses the crux of their concerns.

behalf the applicant seeks intervention is a governmental body ... charged by law with representing the interests of the proposed intervenor." *Keith,* 764 F.2d at 1270; *see Am. Nat'l Bank,* 865 F.2d at 148. The adequacy can also be presumed when "the proposed intervenors and a party to the suit have the same ultimate objective." *Am. Nat'l Bank,* 865 F.2d at 148 n. 3 (citing *Wade,* 673 F.2d at 186 n. 7 (stating that the presumption attaches especially when the party to the suit is the government)). "[A]dequacy of representation is established when no collusion is shown between the representative and the opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Wade,* 673 F.2d at 186 n. 7. Further, inadequacy is not established by "a subjective comparison ... of the conviction of defendants and intervenors." *Keith,* 764 F.2d at 1270. Further still, inadequacy is not established when the applicant argues that his interest is more "particularized" than the government's. *Am. Nat'l Bank,* 865 F.2d at 147–48.

■ In this case, the Corps is a governmental body charged with representing the Applicants' interests, and it has the same ultimate objective as the Applicants have, namely to prevent SW from using the Site. Therefore, we presume that the Corps adequately represents the Applicants. Do the Applicants overcome this presumption? As a first cut, it is unlikely given that they misstate their burden. In their reply brief, they subtitle a section "[SW] Has Not Shown Adequacy Of Representation." *Id.* at 5. Yet it is not for SW to show adequacy; it is for the Applicants to show inadequacy. As a second cut, though, we return to our question of whether they did show it. Their statement about greater knowledge and concern is unpersuasive. *See Keith,* 764 F.2d at 1270. Likewise, their statement about more particularized interests is unpersuasive. *See Am. Nat'l Bank,* 865 F.2d at 147–48. The Appli-

cants did not meet their burden. *See Wade,* 673 F.2d at 186 n. 7.

We conclude that the Corps adequately represents the Applicants in this suit. Therefore, on this alternative ground, we deny the Applicants' motion to intervene by right.

### B. Intervention by Permission

■ The Applicants argue that we should permit them to intervene. "Apart from timeliness, Rule 24(b)(2) requires only that the applicant's claim or defense and the main action 'have a question of law or fact in common.' Certainly that is true here. [The Applicants] wish to defend the very [Corps] decisions [SW] wishes to attack." Apps.' Br. at 11 (citations omitted).

SW responds that we should not permit the Applicants to intervene. They "have no legally protectable interest. Thus, it cannot be said that they have a question of law or fact in common with the Federal Defendants." Pl.'s Br. at 12. Moreover, "it is unclear what [the Applicants] can add to an Administrative Record which will approximate 100,000 pages." *Id.*

■ In *Southmark Corp. v. Cagan,* 950 F.2d 416 (7th Cir.1991), the Seventh Circuit determined that Rule 24(b)(2)[7] establishes three criteria for intervention by permission: (1) the motion must be timely; (2) the applicant must assert a claim or defense that has a question or law or fact in common with the main action; and (3) the applicant's intervention should not unduly delay or prejudice the adjudication of the rights of the original parties. *Id.* at 419. The applicant has the burden of proving each element. Whether or not the applicant carries his burden, however, "[p]ermissive intervention [remains] wholly discretionary with the district court." *Keith,* 764 F.2d at 1272. We consider whether intervention would be productive, not whether it would be harmless. *See Wade,* 673 F.2d at 187 n. 10 (quoting *Wilderness*

---

7. In relevant part, the Rule provides: "Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

*Soc'y v. Morton,* 463 F.2d 1261, 1263 (D.C.Cir.1972) (Tamm, J. concurring)).

In this case, do the Applicants carry their burden? In its response brief, SW raises valid arguments, and, in their reply brief, the Applicants fail to address them. The Applicants' default ends the matter. Similarly, the Applicants' misstate their burden; the Rule establishes three criteria, not two. The Applicants' failure to state and prove the third criterion, absence of undue delay or prejudice, also ends the matter. In any event, for the reasons discussed in Section I.A., the Applicants cannot assert a claim or defense that has a question in common with the main action. The Applicants' opening argument on this point is a non sequitur. They needed to prove that they share a defense, not a desire, with the Corps. Further, the Applicants do not demonstrate that their intervention would be productive. Therefore, we deny the Applicants' alternative motion to intervene under Rule 24(b)(2).

*II. Conclusion*

For the reasons discussed above, we deny the Applicants' motion to intervene under Rule 24(a)(2) and their alternative motion to intervene under Rule 24(b)(2).